The STATE of Texas ex rel. Henry WADE, Criminal District Attorney, Dallas County, Petitioner,

v.

Honorable Richard MAYS, Judge, 204th District Court, Dallas County, Respondent.

No. 69329.

Court of Criminal Appeals of Texas, En Banc.

Feb. 6, 1985.

Rehearing Denied May 29, 1985.

Hal E. Turley, Sharon L. Caldwell, Richard A. Anderson for the interested party Cathy Cody, Dallas, for respondent.

Jan E. Hemphill for the interested party Joe Cody, Jr., Dallas, for petitioner.

Henry Wade, Dist. Atty. and James R. Nelson, Asst. Dist. Atty., Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

This cause seeks to invoke the original subject matter jurisdiction of the Court provided by Tex. Const. V, § 5,[1] and is

1. "Subject to such regulations as may be prescribed by law, the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, and in

denominated an original application for writ of prohibition by the petitioner. The salient undisputed facts follow.

## I.

### COMMENCEMENT OF CRIMINAL ACTION

On March 12, 1984,[2] one Joseph Jones was apparently killed during the course of an aggravated robbery. On the same day, Joe and Cathy Cody were arrested in connection with this offense.

### THE MURDER CHARGES

Joe and Cathy Cody were subsequently, in April, indicted separately[3] for the murder of Joseph Jones. On the last day of April the State filed an announcement of ready in Joe Cody's murder case; in the middle of May, an announcement of ready was filed in the Cathy Cody murder prosecution.

### THE AGGRAVATED ROBBERY CHARGES

Both defendants were, in midJuly, additionally indicted for the March 12 aggravated robbery of Joseph Jones.[4] The State filed an announcement of ready in the Ca-

criminal law matters, the writs of mandamus, procedendo, prohibition, certiorari...."

2. All events occurred in 1984; we will therefore delete the year throughout. Dates of events will not be specified unless of consequence.

3. In Cause Numbers F84–73011–RQ and F84–73010–RQ, respectively.

4. Joe Cody in Cause Number F84–91898–Q and Cathy Cody in Cause Number F84–91897–SQ.

5. Article 32A.02, V.A.C.C.P., provides in pertinent part:
   "Sec. 2(a) Except as provided in Subsections (b) and (c) of this section, a criminal action commences for purposes of this article when ... prior to the filing [of an indictment, information or complaint] the *defendant is* either *detained* in custody or released on bail or personal bond *to answer for* the same offense or, *any other offense arising out of the same transaction, in which event the criminal action commences when he is arrested."*

thy Cody aggravated robbery case on July 31, which was 140 days after "the commencement of the criminal action" against her.[5] An announcement of ready in the Joe Cody aggravated robbery case was filed on August 2, which was 143 days after "the commencement of the criminal action" against him.

### DISMISSAL OF THE AGGRAVATED ROBBERIES

Both Joe and Cathy Cody thereafter in August moved the court to set aside their indictments for aggravated robbery, alleging the State's failure to be ready thereon within 120 days of their arrests for the offense of murder, arising out of the same transaction, entitled them to discharge under Article 32A.02, supra, § 1.[6]

The Honorable Richard Mays, Judge of the 204th Judicial District Court and Respondent herein, granted these motions and discharged each defendant from the aggravated robbery indictments, apparently without any contest or argument from the State.[7]

### MOTIONS TO DISMISS THE MURDERS [8]

Very shortly after Respondent dismissed the aggravated robbery indictments

(All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

6. "Sec. 1. A court shall grant a motion to set aside an indictment, ... if the State is not ready for trial within:
   (1) 120 days of the commencement of a criminal action if the defendant is accused of a felony; * * *"

7. The State now contends Respondent erred in granting these motions, but there is no dispute between briefs of all interested parties filed in this Court that the State did not raise such a complaint at the time the indictments were dismissed. The respondent trial judge also contends the State waived this complaint by failing to pursue objections to the rulings at the time they were made.

8. The records before us indicate that four days after Respondent dismissed the aggravated robbery indictment against Joe Cody, a second murder indictment was returned against him for the murder of Joseph Jones in Cause No. F84–92351–Q, which differed only on the en-

against the Codys, each defendant moved the court in September to dismiss also the murder charges pending against them on the authority of Article 28.061, V.A.C.C.P., which provides:

"If a motion to set aside an indictment, ... for failure to provide a speedy trial as required by Article 32A.02 is sustained, the court shall discharge the defendant. *A discharge under this article is a bar to any further prosecution* for the offense discharged or *for any other offense arising out of the same transaction.*"

A hearing was convened on these motions at which time it was stipulated by the parties that the murder charges arose out of the same transaction as the previously dismissed aggravated robbery charges.

Respondent announced his belief that under the mandatory language of Article 28.061, supra, he had no discretion to do anything other than grant the motions and discharge the Codys.

The State, however, contended the trial court need not comply with Article 28.061, supra, because the caption to the legislation creating the Speedy Trial Act [hereinafter, "the Act"] is defective for reasons discussed in *Ex parte Crisp,* 661 S.W.2d 944 (Tex.Cr.App.1983) (Opinion on motion for rehearing); therefore the Act itself is void and of no effect. In the alternative, the state argued that—in the event the Act is not void—Respondent erred in dismissing the aggravated robbery charges against the Codys since they arose from the same transaction as the murder charges on which the State was timely ready; thus, under the "transactional approach" taken by this Court in *Kalish v. State,* 662 S.W.2d 595 (Tex.Cr.App.1983), once the State was ready on the original charge, the State could subsequently bring

additional charges without violating the Act.

Counsel for Cathy Cody agreed that *Kalish,* supra, was controlling, but argued it mandates dismissal of any further prosecution arising out of the same transaction as the aggravated robbery charges. He also contended the State had waived this argument by failure to raise it at the time Respondent dismissed the robbery charges.

Attorney for Joe Cody contended that *Kalish,* supra, notwithstanding, the unambiguous language of Article 28.061, "doesn't talk at all about which charge comes first and what they are ready on or not ready on;" therefore, the trial court was required to follow the clear dictates of the Legislature. He also argued that when the State, through its Legislature, passes an act into law and a citizen relies on it, the State, through its enforcers of the law (prosecutors), is attempting to deny due process of law "by coming in and saying, in effect, 'King's X, Joe Cody; you can't rely on the law the State of Texas passed, because we didn't get a complete caption on the bill.' "

After hearing these arguments Respondent informed the parties that Article 28.061 and *Kalish,* both supra, barred prosecution of the murder cases and therefore required dismissal of the murder indictments against the Codys. He then announced his intention to enter written orders to such effect within 10 days. On request of the State, Respondent agreed to stay his ruling so that the State could seek extraordinary remedies from this Court. Respondent then admitted Joe and Cathy Cody to bail.

## II.

In this Court, all interested parties have filed briefs in which they essentially elaborate on their positions in the court below;

---

hancement allegations. Apparently, the first murder indictment, Cause No. F84–73011–RQ, against Joe was never dismissed. Thus, his counsel has filed duplicate motions and Respondent has made duplicate rulings in both causes since the return of the second murder indictment.

Since the original murder indictment was never dismissed, we will, for the sake of clarity, continue to refer only to it as "the murder charge." But everything we say regarding it applies with equal force to the second murder indictment against Joe Cody.

therefore, we will not reiterate those arguments.

## NATURE OF THE REMEDY SOUGHT

Effective January 1, 1978, Art. 5, § 5, Tex. Const. was amended in order to confer upon the Court powers to grant extraordinary writs in cases "regarding criminal law matters," in addition to the previously existent mandamus and prohibition authority to enforce its own jurisdiction. See generally *State ex rel. Vance v. Routt,* 571 S.W.2d 903 (Tex.Cr.App.1978); *Thomas v. Stevenson,* 561 S.W.2d 845 (Tex. Cr.App.1978) (Onion, P.J., concurring).

In determining the specific nature of the extraordinary relief sought, this Court will not be limited by the denomination of petitioner's pleadings, but will look to the essence of the pleadings, including the prayers, as well as the record before us. See, e.g., *Broggi v. Curry,* 571 S.W.2d 940 (Tex.Cr.App.1978); see also *Vance v. Clawson,* 465 S.W.2d 164 (Tex.Cr. App.1971); and *City of Dallas v. Dixon,* 365 S.W.2d 919 (Tex.1963).

The essential difference between the writ of prohibition and the writ of mandamus is that the former issues to prevent the commission of a future act whereas the latter operates to undo or nullify an act already performed; the former will not be granted when the act sought to be prevented is already done, but will lie when such act is not a full, complete and accomplished judicial act. *White v. Reiter,* 640 S.W.2d 586 (Tex.Cr.App.1982); *Garcia v. Dial,* 596 S.W.2d 524 (Tex.Cr.App.1980); *Smith v. Blackwell,* 500 S.W.2d 97 (Tex.Cr. App.1973).

It is clear from the record that the State seeks to have us prevent Respondent from dismissing the murder indictments pending against Joe and Cathy Cody, and the relief sought is therefore prohibition.

## ENTITLEMENT TO RELIEF

"The line between writs of mandamus and prohibition is often thin, e.g., *State ex. rel. Vance v. Clawson,* 465 S.W.2d 164, 168–169 (Tex.Cr.App.1971), but entitlement to either must be shown to be 'clear and indisputable,' *Will v. United States,* 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967); *Denison v. Sheppard,* 122 Tex. 445, 60 S.W.2d 1031 (1933); 'unequivocal,' *Wortham v. Walker,* 133 Tex. 255, 128 S.W.2d 1138, 1151 (1939); 'abundantly clear,' *Meissner v. Fuchs,* 290 S.W.2d 941, 944 (Tex.Civ.App. —Galveston 1956) error dismissed. * * [T]he writ will not issue 'if the right is doubtful' nor 'if there is any substantial defect in the proof of the ... right,' *English v. Treaccar,* 153 S.W.2d 539, 541 (Tex.Civ.App.—Galveston 1941). We agree that the writ 'issues to require the execution of a matter whose merit is beyond dispute....' *Wortham v. Walker,* [133 Tex. 255], 128 S.W.2d at 1151 [1939]."

*Knowles v. Scofield,* 598 S.W.2d 854, 860 (Tex.Cr.App.1980).[9]

Here, the State's only allegation as to its entitlement to the relief sought is that the "relevant facts are completely undisputed [and] the question resolves itself to a pure question of law." In these regards, the State is correct. Accordingly, the threshold questions we confront are whether this

---

**9.** That the petitioner has no other adequate remedy at law is the second prong of his threshold burden of proof in extraordinary proceedings. In the instant case, there is no question that if Respondent were to dismiss the subject murder indictments against the Codys, the State would have no other remedy whatsoever. See generally *Garcia v. Dial,* supra; see also Art. V, § 26, Tex. Const.

For this reason—even if the State could demonstrate Respondent's dismissal of the aggravated robbery indictments was in error—that issue cannot be relitigated here, nor form the basis for the relief sought today. *Holmes v. Denson,* 671 S.W.2d 896 (Tex.Cr.App.1984).

condition of the dispute before us entitles the State, as a matter of indisputable right, to the extraordinary relief it seeks, and, if not, whether, the action sought to be prevented otherwise constitutes an unequivocal duty devolving on Respondent such that his failure to desist constitutes a proper subject of the exercise of our extraordinary writ authority.

## CLEAR LEGAL RIGHT TO DENIAL OF THE MOTIONS TO DISMISS?

■ The State is correct in its implied observation that disputed facts automatically defeat a petitioner's entitlement to extraordinary relief, e.g., *Knowles v. Scofield,* supra; it is also true that there are no disputes as to the facts here. But whether entitlement is demonstrated by the sole presentation of a hotly contested unsettled "question of law" is another matter. For, the law is clear that petitioner must show no impediment to the doing of the act sought to be compelled or prohibited and must also show he has an absolute right to such a judgment. *Matthaei v. Clark,* 110 Tex. 114, 216 S.W. 856 (1919).

■ We are not persuaded that any litigant has an absolute right to have a court rule in his favor on a claim such as that advanced by the State in this cause. Upon consideration of the motions before him and the State's arguments in opposition, Respondent was required to consider and resolve several questions of law before making his ultimate rulings as to dismissal.[10] Each of these judicial "determinations" Respondent was required to make before ruling was an "impediment" to the establishment any "right" to the relief sought, within the meaning of extraordinary writ law.[11] See *City of Galveston v. Mann,* 135 Tex. 319, 143 S.W.2d 1028 (1940) [wherein writ will not issue if right

is contingent upon other acts of relator or others].

■ Furthermore, even the State concedes that the caption to the Act may not be void in its alternative argument which is contingent upon just such a determination by this Court. Surely, if the petitioner concedes the act (ruling) of Respondent complained of *may* be correct in this regard, he has not even stated a prima facie adequate claim for extraordinary relief much less demonstrated a clear legal "right" to the trial court's ruling in his favor. *Wortham v. Walker,* supra. An extraordinary writ will not be used to establish a claim of uncertain merit. *Busby v. Rabe,* 638 S.W.2d 235 (Tex.App.—Tyler 1982, no writ).

## CLEAR LEGAL DUTY ON PART OF RESPONDENT TO DENY THE MOTIONS TO DISMISS?

We turn now to the question of whether petitioner has established that Respondent had an unequivocal duty to rule in the State's favor on the motions to dismiss.

■ Generally, extraordinary relief will not issue unless the very act (result) sought by the petitioner is manifestly "ministerial" in nature on the part of Respondent—as opposed to "judicial" or "discretionary." *Vance v. Routt,* supra; *O'Meara v. Moore,* 142 Tex. 350, 178 S.W.2d 510 (1944); cf. *Swann v. Wheeler,* 126 Tex. 167, 86 S.W.2d 735 (Tex.Com.App.1935). Thus, an extraordinary writ is an order directing a public official to perform a duty exacted by law and will not issue to enforce a duty that is to any degree debatable. *In re Corrugated Container Antitrust Litigation,* 614 F.2d 958 (CA5 1980) *cert. den. sub. nom Mead Corp. v. Adams Extract Co.,* 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980).

---

**10.** See arguments of the parties set out in part I, *ante,* at 896–897.

**11.** Petitioner must make a clear showing that under certain facts, the law is subject to but one

interpretation; he then must show that undisputed facts exist which entitle him unequivocally to a right flowing from that single interpretation. *Knowles v. Scofield,* supra.

A "duty imposed on an official by law" means, in this context, one which is "clearly fixed and required by law;" *Oney v. Ammerman*, 458 S.W.2d 54 (Tex. 1970); the duty must be shown to be "unequivocal," "unconditional" and "present," *City of McAllen v. Daniel*, 147 Tex. 62, 211 S.W.2d 944 (1948); it must be shown that to do other than that sought by relator would be a clear violation of official duty; e.g., *King v. Moorhead*, 203 S.W.2d 940 (Tex.Civ.App.—Galveston 1947, no writ).

As in this case, the petitioner in *Texas Department of Corrections v. Dalehite*, 623 S.W.2d 420, 424 (Tex.Cr.App.1981), was able to demonstrate both that no other adequate remedy at law, was available, and that the question before Judge Dalehite distilled to only a question of law. Judge W.C. Davis, in rejecting the claim for the Court, noted there:

> "An act is said to be [subject to extraordinary relief] when the law clearly spells out the duty to be performed by an official and does so with such certainty that *nothing is left to the exercise of* discretion or *judgment. Forbes v. City of Houston*, 356 S.W.2d 709 (Tex.Civ.App. 1962).

See also *Texas Board of Pardons & Paroles v. Miller*, 590 S.W.2d 142 (Tex.Cr. App.1979); and 37 Tex.Jur.2d Mandamus § 47.

It is a corollary to all stated above that when there is any reason which could justify the action of the court, a writ requiring the court to do otherwise cannot issue.[12]

In this case, it is apparent that the several legal determinations Respondent was required to make prior to issuing his ultimate rulings on the motions to dismiss, necessarily involved the exercise of a classic judicial function, as opposed to a function in the nature of a ministerial act.

Moreover, we do not find, nor do we read petitioner in the instant case to be seriously contending, that Judge Mays was "unequivocally required by law" to rule in the State's favor on all the issues before him; that Judge Mays' intended ruling would be a "clear violation of his official duty;" that Judge Mays' failure to rule in the State's favor on the motions to dismiss would "exceed his authority," e.g., *Holmes v. Denson*, 671 S.W.2d 896 (Tex.Cr.App.1984), would be a violation of a "manifest duty," see *Texas Board of Pardons & Paroles v. Miller*, supra, or a "gross abuse of discretion," *State v. Sewell*, 487 S.W.2d 716 (Tex. 1972); *Womack v. Berry*, 156 Tex. 44, 291 S.W.2d 677 (1956), amounting to "fraud, caprice or a purely arbitrary decision without reason." See, e.g., *White v. Reiter*, supra; see also *Southland-Greyhound Lines, Inc. v. Richardson*, 126 Tex. 118, 86 S.W.2d 731 (Tex.Com.App.1935); *Bush v. Vela*, 535 S.W.2d 803 (Tex.Civ.App.—Corpus Christi 1976, no writ).

### III.

The only clear right the petitioner has established here is the State's right to have Respondent rule on (either accept or reject) its claims that the Codys' motions to dismiss should be denied; the only clear legal duty on Respondent the petitioner has shown, is the duty to rule on (either accept or reject) the State's arguments in opposition to the Codys' motions to dismiss. We hold the record establishes Respondent has in all things performed this duty and the State's unequivocal right has therefore

---

12. "The remedy ... is summary, extraordinary, harsh and drastic, and when it is resorted to for the purpose of compelling a court to render a particular judgment when that court thinks [otherwise], its enforcement is attended by some delicacy. Accordingly, we believe that when there is any reason which could justify the action of the court ..., a writ ... requiring him to enter a judgment cannot be issued."
*Tide Products, Inc. v. Braswell*, 586 S.W.2d 146, 147 (Tex.Civ.App.—Texarkana 1979, no writ), quoting *Southwestern Bell Tel. Co. v. Shell*, 266 S.W.2d 476, 478 (Tex.Civ.App.—Ft. Worth 1954, no writ).

been honored. It follows that an extraordinary writ will not issue when it is necessary to try and decide conflicting claims or collateral questions which require legal controversy for their settlement. See *Porth v. Currie*, 613 S.W.2d 534 (Tex.Civ. App.—Tyler 1981, no writ); see also 55 CJS Mandamus §§ 53, 58, 59.

Indeed, to hold the mere presentation of a pure but unsettled question of law alone constitutes an adequate basis for exercise of our extraordinary writ authority would grossly undermine and distort the historical function of that authority in our system of justice; such a holding would intolerably erode the authority and unique role of our trial judges within that system. See generally *Garcia v. Dial*, supra; and *Holmes v. Denson*, supra, [wherein the nature of the jurisdiction of our criminal district trial courts is assayed].

In sum, we decline petitioner's invitation and adhere to the well settled principle that petitioner's failure to establish an indisputable right to have Respondent deny the Codys' motions to dismiss, constitutes a failure to invoke this Court's extraordinary writ authority.

Accordingly, the application for writ of prohibition is denied.

ONION, P.J., and McCORMICK and WHITE, JJ., dissent.

W.C. DAVIS, J., not participating.